1

2

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

3

4   CAROLYN FOWLER,

5                   Plaintiff,

6       v.

7   POSTMASTER GENERAL JOHN
    POTTER U.S. Postal Service, *et al.*,

8

                    Defendants.

9   _____

No.  C 06-04716 SBA

**ORDER**

[Docket No. 49]

10

11                        **REQUEST BEFORE THE COURT**

12          Before the Court is defendants' Motion for Summary Judgment (the "Motion") [Docket

13   No. 38], plaintiff Carolyn Fowler's Memorandum in Opposition to the Motion (the "Opposition")

14   [Docket No. 52], and defendants' Reply Memorandum regarding the Motion (the "Reply") [Docket

15   No. 58].  The EEOC found defendants' John Potter, Postmaster General for the United States Postal

16   Service (the "agency"), and the agency failed to reasonably accommodate Fowler's respiratory and

17   mobility impairments, under the Rehabilitation Act of 1973 (the "Act"), 29 U.S.C. § 791 et seq.

18   Fowler received $5,000 in compensatory damages.  She then sued in this Court, alleging disparate

19   treatment based on her disabilities, retaliation, a failure to accommodate, harassment, a hostile work

20   environment, and a failure to engage in an interactive process, all under the Act and under Title VII

21   of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.

22          Defendants have now moved for summary judgment under Federal Rule of Civil

23   Procedure 56, on four grounds.  First, they claim Fowler failed to exhaust her administrative

24   remedies for her first, second, fourth, and fifth claims.  Second, they argue her claims under the Act

25   are preempted by the Federal Employees Compensation Act (the "FECA"), 5 U.S.C. § 8101 *et seq*.

26   In addition, with regards to their alleged failure to accommodate or interact, they argue Fowler is not

27   "disabled" under the Act, and that she failed to identify a position which would reasonably

28   accommodate her.  Lastly, with regards to her disparate treatment claim, they argue she is not

1  disabled under the Act, she has not identified others treated differently, and she has failed to show
2  she suffered an adverse employment action.

3       The Court finds this matter appropriate for resolution without a hearing under Federal Rule
4  of Civil Procedure 78(b).  As discussed below, the Court GRANTS in part and DENIES in part the
5  Motion.  Specifically, the Court GRANTS the Motion with regards to Fowler's first through sixth
6  claims, under Title VII; GRANTS the Motion with regards to Fowler's first, second, fourth, and fifth
7  claims under the Act; and, DENIES the Motion with regards to Fowler's third and sixth claims
8  under the Act.

9                                    **BACKGROUND**[1]

10  **I.      Fowler's Work and Disability History**

11       Fowler began working for the agency in 1969.  In 1989 she suffered work-related injuries
12  which limited her ability to walk, stand, stoop, or lift.[2]  As an accommodation to her injuries, Fowler
13  worked as a "Nixie," Mot. at 2:7-8; Opp'n at 3:6-7, a person who repairs damaged mail, Docket
14  No. 39, Ex. "A" at 72-74 (Tr. of Carolyn Fowler Dep. ("Fowler Tr.")).  Fowler held this position for
15  about ten years.  Opp'n at 3:6-7.

16       In January 2000, she became unable to work when her asthma, and an allergic condition with
17  dust intolerance, were triggered by dust and other elements in her working environment.  In early
18  2000, she filed a claim with the Office of Workers Compensation Programs ("OWCP") alleging
19  environmental factors in her workplace triggered her asthma and rhinitis.  The OWCP accepted her
20  claim, and she was off work for the rest of 2000.

21       In November 2000 and January 2001, she had medical examinations.  Her physicians stated
22  were she to return to work, she should be restricted to work in a non-dusty environment, with no

23

24  _____

[1]      The parties' statements of facts generally fail to cite to evidentiary sources.  Unless otherwise
25  indicated, the Court takes the facts from the decision rendered in Fowler's EEOC appeal, *Carolyn*
    *Fowler v. John E. Potter, Postmaster Gen, U.S. Postal Serv., (Pac. Area), Agency*, EEOC Appeal
26  No. 01A41303, 2006 WL 266502 (Jan. 30, 2006).

27  [2]      The facts are unclear, but apparently uncontested, that over time Fowler suffered orthopedic
    injuries to her leg, knee, and ankle due to repetitive stooping and bending when unloading postal
28  trucks, and at some undisclosed time, from when a dolly ran into her desk, somehow pinning her
    legs.  Mot. at 2:6-7; Docket No. 39, Ex. "A" at 72-74 (Dep. Tr. of Carolyn Fowler).

1   lifting greater than five pounds, and no bending, squatting, climbing, kneeling, or reaching above the

2   shoulders.  She was also advised not to use her right arm at or above shoulder level, though she

3   could occasionally stand and walk for up to two hours.  She had no restrictions on pushing, pulling,

4   repetitive hand motion, sitting, or driving.

5           In response to Fowler's medical restrictions, the agency's Pacific Area Injury Compensation

6   Office ("ICO") created a special position for her, to serve as a Lobby Director at the agency's main

7   branch in Oakland.  She started this position, on February 5, 2001.  In it, she answered customers'

8   questions and helped them fill out various forms.  She was required, however, to stand and walk

9   more than two hours per day.  Docket No. 57 ¶ 3 (Decl. of Carolyn Fowler "Fowler Decl.").

10  Further, there were high dust levels in the areas leading to the bathroom she used, and in the area

11  where it was located.  In response, the agency provided her with a dust mask.  Fowler declined to

12  use it, however.[3]  She thus contacted the ICO to inform it she could not perform this job.  An Injury

13  Compensation Specialist (the "ICS") said she would consider other options.

14          The agency, however, did not present her with a new job offer.  Fowler stopped coming to

15  work on May 9, 2001 and later retired.

16  **II.      Fowler's EEO Complaint**

17          On June 19, 2001, Fowler filed a formal equal employment opportunity (EEO) complaint.  In

18  it, she alleges the agency had discriminated against her, under section 501 of the Act, by assigning

19  her to the Lobby Director position, with its standing and walking requirements, and dusty

20  conditions, given her physician's limitations and her asthma, rhinitis, leg, knee, and ankle

21  disabilities.  As such, she alleges the position was not a reasonable accommodation.

22  **III.     Fowler's EEOC Hearing**

23          Following an investigation, Fowler had a hearing before an EEOC Administrative Judge

24  ("AJ") in April and June of 2003.  On the undisputed evidence, the AJ found Fowler was impaired

25  by her orthopedic conditions and her asthma and rhinitis.  The AJ further found it was undisputed

26

27  ─────────────────────

28  [3]        According to a September 9, 1998 letter from Dr. Harry Fung, Fowler requires a dust-free
    work area due to her environmental allergies, and wearing a mask is very irritating to her face.
    Fowler Decl., Ex. "A" at 1.

when the agency offered her the Lobby Director position, she could not walk or stand more than two hours per day, and had been so restricted since 1999.  The AJ thus found the undisputed evidence showed her conditions significantly restricted her ability to stand and walk, relative to the average person, and she was thus disabled under the Act.  The AJ also found the agency failed to establish Fowler was unable to perform the essential functions of the Lobby Director position as represented in the January 26, 2001 job offer description.

In analyzing whether the Lobby Director position was an effective accommodation, the AJ noted it was undisputed the agency provided Fowler with a dust mask, for a one minute trip to reach a bathroom, which she declined to use.  He thus found this an effective accommodation.  The AJ, however, found the undisputed evidence showed Fowler was required to stand and walk more than two hours per day, based on testimony from Fowler, and testimony from the Manager of Customer Services (the "MCS") that Fowler had to stand and walk 30 minutes every hour, and the position's job description.  The AJ also found agency officials, including the MCS and the ICS knew the position exceeded Fowler's limitations, shortly after she started.  As such, the AJ found the position did not contain an effective accommodation.  Thus, the AJ found the agency discriminated against Fowler under the Act.[4]

The AJ, however, did not award any compensatory damages, on the grounds the ICS acted in good faith to place Fowler in a position which accommodated her restrictions, and the agency tracked Fowler's accommodation problems as Lobby Director.   The AJ did order the agency to engage in the interactive process with Fowler to determine whether a reasonable accommodation were available to allow her to return to work without undue hardship to the agency.

**IV.     Fowler's EEOC Appeal**

Fowler timely appealed, which the EEOC accepted under 29 C.F.R. § 1614.405.  Reviewing the AJ's findings of fact under the substantial evidence standard, and the findings of law de novo, the EEOC modified the AJ's decision.  The EEOC found the AJ's conclusion that the agency

---

[4]     While the appeal decision indicates the AJ found "no discrimination," a subsequent EEO decision indicates the AJ found discrimination, but awarded no damages.  Docket No. 39, Ex. "G" at 1 (*Carolyn Fowler v. John E. Potter, Postmaster Gen c/o Pac. Oper.*, EEOC Hr'g No. 370-A2-2358X (Oct. 4, 2006)).

1   monitored and/or responded to Fowler's accommodation problems as Lobby Director was not

2   supported by substantial evidence.  As the EEOC found, "The [agency] had a duty to see that

3   [Fowler's] restrictions were honored and enforced by management."  Instead, however, the ICS

4   knowingly placed Fowler in a position which exceeded her physical limitations, the MCS knew

5   when Fowler was Lobby Director that the position exceeded her limitations, and Fowler informed

6   the ICS and MCS of this problem.  Because the agency failed to then accommodate Fowler or

7   explain to the AJ why doing so would have posed a hardship, the agency did not act in good faith.

8        As such, the EEOC remanded the matter for a compensatory damages determination.  It also

9   ordered the agency to train the ICO agents and MCS in their duties under the Act, to consider

10  disciplining the ICS and MCS for discriminatory conduct, and to investigate Fowler's entitlement to

11  compensatory damages.  The EEOC also ordered the agency to engage in the interactive process

12  with Fowler to determine if a reasonable accommodation were available, without undue hardship to

13  the agency, if Fowler wished to leave retirement.  On May 5, 2006, the EEOC denied the agency's

14  request for reconsideration.  *Carolyn Fowler v. John E. Potter, Postmaster Gen, U.S. Postal Serv.,*

15  *Agency*, EEOC Appeal No. 01A41303, 2006 WL 1310201 (May 5, 2006).  On October 4, 2006, an

16  EEO Services Analyst determined Fowler was entitled to $5,000 in compensatory damages.  Docket

17  No. 39, Ex. "G" at 11 (*Carolyn Fowler v. John E. Potter, Postmaster Gen c/o Pac. Oper.*, EEOC

18  Hr'g No. 370-A2-2358X (Oct. 4, 2006)).  The analyst also offered Fowler the option of appealing to

19  the EEOC or filing in district court.  *Id.*

20  **V.    Fowler's Suit**

21       Before the analyst issued her ruling, Fowler sued defendants, in this Court, on August 3,

22  2006.  *See* Docket No. 1 at 1 (Compl.).  In her Complaint, Fowler claims defendants discriminated

23  against her on the basis of her disabilities, in violation of the Act and Title VII, *id.* at 6-9,[5] retaliated

24  against her, in violation of the Act and Title VII, *id.* at 9-10, failed to reasonably accommodate her

25  disabilities, in violation of the Act and Title VII, *id.* at 10-12, harassed her, in violation of the Act

26  and Title VII, *id.* at 12-14, created a hostile work environment, in violation of the Act and Title VII,

27  ───────────────

28  [5]      The Court does not actually know what pages 7 and 8 of the Complaint contain, as they were
not filed in ECF or with the Court.  *See* Compl. at 6-9.

*id.* at 14-16, and failed to engage in an interactive process, in violation of the Act and Title VII, *id.* at 16-18.  As such, she claims general, special, and punitive damages, costs and attorneys' fees, and requests an order for the agency to accommodate her in good faith.  *Id.* at 19.

On April 22, 2008, defendants filed their Motion.  *See* Docket No. 38 at 1.  In it they raise two affirmative defenses.  First, they claim Fowler failed to exhaust administrative remedies for her first, second, fourth, and fifth claims.  Mot. at 1:14-17.  Second, they argue her claims under the Act are preempted by the Federal Employees Compensation Act (the "FECA"), 5 U.S.C. § 8101 *et seq.*  Mot. at 1:18-20.  In addition, they raise negative defenses.  With regards to their alleged failure to accommodate, they argue Fowler is not "disabled" under the Act, and she failed to identify a position which would reasonably accommodate her.  *Id.* at i, 1.  With regards to her disparate treatment claim, they argue she is not disabled under the Act, she has not identified others treated differently, and she has failed to show she suffered an adverse employment action.  *Id.* at i-ii, 1.  Fowler opposed on May 20, 2008, *see* Docket No. 52 at 1, and defendants replied on May 27, 2008, *see* Docket No. 58 at 1.  The Court now addresses these pleadings.

## LEGAL STANDARD

### I.      The Standard of Review for EEOC Proceedings for Federal Employees

When a federal employee challenges an administrative ruling in district court, they are entitled to a trial de novo.  *Chandler v. Roudebush*, 425 U.S. 840 (1976).  Moreover, EEOC findings are admissible evidence, though not binding on a district court judge.  *Plummer v. W. Int'l. Hotels Co.*, 656 F.2d 502, 504-05 (9th Cir. 1981).[6]

### II.     Summary Judgment under Federal Rule of Civil Procedure 56

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The party moving for summary judgment must demonstrate there are no genuine issues of material fact.  *See Horphag v. Research Ltd. v. Garcia*, 475 F.3d 1029, 1035

---

[6]      Although allegedly affirming *Plummer*, the Court declines defendants' invitation to consider *Friel v. Daley*, 230 F.3d 1366 (9th Cir. 2000), as it is an unpublished opinion and not citable or precedential under Ninth Circuit Rule 36-3.

(9th Cir. 2007).  An issue is "genuine" if the evidence is such a reasonable jury could return a verdict for the non-movant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Rivera v. Philip Morris, Inc*., 395 F.3d 1142, 1146 (9th Cir. 2005).  An issue is "material" if its resolution could affect an action's outcome.  *Anderson*, 477 U.S. at 248; *Rivera*, 395 F.3d at 1146.

In responding to a properly supported summary judgment motion, the non-movant cannot merely rely on their pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002); *Federal Trade Comm'n v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001).  In determining whether a genuine issue of material fact exists, the Court views the evidence and draws inferences in the light most favorable to the non-movant.  *See Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004); *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004).

**III.     The Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.***

Section 501 of the Act requires the agency annually update "an affirmative action program plan for the hiring, placement, and advancement of individuals with disabilities ...."  29 U.S.C. § 791(b).  The plan must "provide[] sufficient assurances, procedures and commitments to provide adequate hiring, placement, and advancement opportunities for individuals with disabilities."  *Id.*

Section 504 of the Act declares:

> No otherwise qualified individual with a disability in the United States, as
> defined in section 705(20) of this title, shall, solely by reason of her or his disability,
> be excluded from the participation in, be denied the benefits of, or be subjected to
> discrimination ... under any program or activity conducted by ... the United States
> Postal Service.

29 U.S.C. § 794(a).

"For the purposes of this section, the term 'program or activity' means all of the operations of--

(1)(A) a department [or] agency,...."  *Id.* § 794(b).

///

1    The standards used to determine whether this section has been violated in a

2    complaint alleging employment discrimination under this section shall be the

3    standards applied under title I of the Americans with Disabilities Act of 1990 (42

4    U.S.C. 12111 *et seq.*) and the provisions of sections 501 through 504, and 510, of the

5    Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as

6    such sections relate to employment.

7    29 U.S.C. §§ 791(g), 794(d).

8    **ANALYSIS**

9    For the following reasons, the Court GRANTS the Motion, in part, with respect to Fowler's

10    first through sixth claims under Title VII, GRANTS the Motion, in part, with respect to her first,

11    second, fourth, and fifth claims under the Act, but DENIES the Motion, in part, with to her third and

12    sixth claims under the Act.

13    **I.      Failure to Exhaust Administrative Remedies**

14    Defendants argue Fowler failed to exhaust her administrative remedies with regards to her

15    first claim for disparate treatment, her second claim for retaliation, her fourth claim for harassment,

16    and her fifth claim for hostile work environment.  Mot. at 6-7.  Fowler raises these claims under both

17    the Act and Title VII, so the Court must consider whether she fulfilled her administrative

18    requirements under each.

19    **A.      Fowler failed to exhaust her administrative remedies for her disparate**

20    **treatment, retaliation, harassment, and hostile work environment claims under**

21    **the Rehabilitation Act.**

22    Section 505 of the Act requires a federal employee who wishes to pursue a claim against

23    their federal employer, under section 501 or 504 of the Act, 29 U.S.C. §§ 791, 794, must exhaust the

24    administrative remedies as if they were proceeding under Title VII.  29 U.S.C. § 794a; 29 C.F.R.

25    § 1614.105; *Wilson v. MVM, Inc.*, 475 F.3d 166, 173-74 (3d Cir. 2007).

26    ///

27    ///

28    ///

8

1    Under Title VII, a plaintiff must exhaust their administrative remedies with the EEOC or a

2    similar state agency, before filing in district court.[7] *Freeman v. Oakland Unified Sch. Dist.*, 291

3    F.3d 632, 636 (9th Cir. 2002).  A failure to do so deprives the district court of jurisdiction.  *Id.*

4    Nonetheless, the district court has jurisdiction not only over allegations included in an EEOC

5    charge, but also those which fall within the scope of an actual EEOC investigation, or which an

6    EEOC investigation could have reasonably been expected to discover based on a discrimination

7    claim.  *Id.*  A court will find a plaintiff's civil claims reasonably related to the allegations in their

8    discrimination claim, to the extent the former claims are consistent with their original theory of their

9    case. *Id.*

10    Defendants argue Fowler never alleged disparate treatment, retaliation, harassment, or hostile

11    work environment in her EEO claim.  Mot. at 8-10.  Fowler's responds, "defendant acknowledges in

12    its moving papers, Ms. Fowler did specifically identify that she was subjected to harassment by

13    defendants."  Opp'n at 8:21-24.  Fowler, however, fails to state where defendants allegedly made

14    this acknowledgment.  Nor was the Court able to identify any such acknowledgment, save for those

15    parts in their Motion where defendants argued that Fowler never alleged disparate treatment,

16    retaliation, harassment, or hostile work environment in her EEO claim.  Thus, Fowler fails to carry

17    the day on this issue.

18    Nonetheless, she continues, "[d]efendant's [sic] failure to respond to Ms. Fowler's

19    complaints and requests did constitute harassment, retaliation[,] and a hostile work environment.

20    Other disabled workers['] requests were not ignored and their requests for accomodated [sic]

21    addressed."  Opp'n at 8:23-26.  And, she alleges without explanation that these claims "are and were

22    reasonably related to" her EEO complaint.  *Id.* at 9:2-3.

23    The Court first notes there is no evidence before it to suggest Fowler expressly raised these

24    claim in her EEO or EEOC proceedings.  In addition, these claims cannot be reasonably related to

25    her EEO complaint, because there is no evidence before the Court to suggest any disparate

26    treatment, retaliation, or harassment causing a hostile work environment ever occurred in this

27    _____

28    [7]    Fowler, of course, as an agency employee, did not have the option of filing with a state
agency.

1    matter.

2    ///

3              **1.      Fowler has produced no evidence of disparate treatment.**

4              In order to state a prima facie case under the Act, a plaintiff must establish, inter alia, that

5    they are (1) an individual with a disability, (2) otherwise qualified, and (3) subjected to

6    discrimination solely by reason of their disability.  *See* 29 U.S.C. § 794(a); *Mustafa v. Clark County*

7    *Sch. Dist.*, 157 F.3d 1169, 1174 (9th Cir. 1998).  If a plaintiff successfully makes a prima facie case

8    under the Act, then the burden shifts to the defendant to articulate a legitimate nondiscriminatory

9    reason for its employment actions.  *Lucero v. Hart*, 915 F.2d 1367, 1371 (9th Cir. 1990).  If the

10   employer demonstrates a non-discriminatory reason for its actions then the plaintiff is given the

11   opportunity to show the employer's justification is pretextual.  *See Mustafa*, 157 F.3d at 1175.

12                    **a.      A factual dispute exists as to whether Fowler is an individual with**

13                    **a disability.**

14             "An individual has a disability if he has a physical or mental impairment which substantially

15   limits one or more major life activities, a record of such impairment, or is regarded as having such

16   an impairment." *Mustafa*, 157 F.3d at 1174 (citing 29 C.F.R. § 1630.2(g)); *see* 29 U.S.C. §

17   705(9)(B), (20).  A "physical or mental impairment" means any "physiological disorder, or

18   condition, cosmetic disfigurement, or anatomical loss affecting" certain body systems, including the

19   musculoskeletal or respiratory systems.  29 C.F.R. § 1630.2(h).

20             The term "substantially limits" means a person is either unable to perform a major life

21   activity that the average person in the general population can perform, *id.* § 1630.2(j)(1)(i), or a

22   person is significantly restricted as to the condition, manner, or duration under which they can

23   perform a particular major life activity as compared to the condition, manner, or duration under

24   which the average person in the general population can perform that same major life activity, *id.*

25   § 1630.2(j)(1)(ii).  Factors to consider in making this determination are (i) the nature and severity of

26   the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or

27   long term impact, or the expected permanent or long term impact of or resulting from the

28   impairment.  *Id.* § 1630.2(j)(2).  "Major life activities" include functions such as walking, breathing,

1    and working.  *Id.* § 1630(i).

2    ///

3         Fowler has presented her doctor's statements indicating were she to return to work, she

4    would be restricted to work in a non-dusty environment, with no lifting greater than five pounds, and

5    no bending, squatting, climbing, kneeling, or reaching above the shoulders.  Fowler Decl., Exs. "A"-

6    "B."  Her doctors have also advised her not to use her right arm at or above shoulder level, though

7    she can occasionally stand and walk for up to two hours.  *Id.*  On this evidence, the AJ correctly

8    found Fowler has musculoskeletal and respiratory impairments which significantly restrict her

9    walking and breathing relative to the average individual.  This is especially so, given the apparently

10   permanent nature of her impairments, which date back to 1999.

11        In opposition, defendants argue their medical expert will testify Fowler is not disabled under

12   the Act.[8]  Opp'n at 14:6-15.  That is, he will testify her complaints of pain do not match her history

13   of injuries.  *Id.*  The Court will not resolve this dispute over a genuine issue of material fact, in a

14   summary judgment posture.  This is especially prudent where witnesses will testify Fowler had a

15   pronounced limp and used a cane in 2000 and 2001.  Docket No. 55 ¶ 2 (Decl. of Frederic Jacobs

16   ("Jacobs Decl.").  This is even more prudent where defendants' back-up argument is they

17   accommodated Fowler, not because she was "disabled" under the Act, but because she was

18   "disabled" under the FECA.  *Id.* at 14:26-15:10; *see* Fowler Decl., Ex. "C" at 1 (letter from USPS to

19   one of Fowler's doctors stating she is "permanently partially disabled").  Defendants, however, fail

20   to indicate the two concepts are absolutely exclusive, as a matter of law.  Regardless, the Court will

21   leave the issue of Fowler's disability for a fact-finder to determine.

22                  **b.**    **Fowler was otherwise qualified for the Lobby Director position.**

23        ["]Qualified individual with a disability["] means an individual with a

24

25   [8]     Defendants also argue *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 71 8, 723-724 (2nd Cir. 1994)
     held asthma is not a disability, as it is only active under certain conditions.  Opp'n at 14:16-18.
26   *Heilweil* actually held the plaintiff failed to bring forth medical documentation indicating her asthma
     was triggered by "any poorly-ventilated place[,]" rather than just the fumes from the blood bank in
27   the hospital where she worked.  *Id.* at 723.  As such, the court found she could have worked in many
     other positions in the hospital but outside the blood bank, or outside the hospital, thus leading it to
28   find her asthma did not substantially limit her breathing.  *Id.*  Fowler's doctors, in contrast, have
     ordered she not be exposed to *any* dust-ridden environments, and be situated in well ventilated areas.

disability who satisfies the requisite skill, experience, education and other job-related

requirements of the employment position such individual holds or desires, and who,

with or without reasonable accommodation, can perform the essential functions of

such position.

29 C.F.R. § 1630.2(m).

Defendants do not address this issue, thus offering no dispute that Fowler was qualified for the

position of Lobby Director, with or without a reasonable accommodation.

<strong>c.        Fowler has presented no evidence she was subjected to<br>discrimination solely by reason of her disability.</strong>

The only evidence the Court can find which appears relevant to Fowler's claim of disparate

treatment is her evidence relevant to her claim the agency failed to accommodate her, her evidence

relevant to her claim the agency failed to engage in the interactive process, and two statements in her

Opposition.  Looking first at these two statements, she says other disabled employees who requested

accommodations were accommodated.  Opp'n at 8:25-26.  And, she says defendants' failure to

oppose her disparate treatment claim in her EEO proceedings should not bar her from raising it now,

where it is reasonably related to her EEO claim.  *Id.* at 8:25-9:3.  Fowler, however, provides no

evidence to back up either of these statements, nor does she elaborate on them.  Nor can she meet

her prima facie burden merely by re-labeling her failure-to-accommodate claim or failure-to-interact

claim as disparate impact claims.  Were the Court to allow this, every plaintiff who claimed a failure

to accommodate or interact would automatically have a disparate treatment claim which could

survive summary judgment.  As the Court is not willing to circumvent the Act's requirements in this

manner, Fowler has failed to produce *any* evidence to support her disparate treatment claim.

<strong>d.        Conclusion</strong>

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment on

Fowler's first claim for disparate treatment under the Act.

<strong>2.        Fowler has produced no evidence of retaliation.</strong>

It is unlawful to discriminate against any individual because that individual

has opposed any act or practice made unlawful by this part or because that individual

12

1    ///

2    ///

3           made a charge, testified, assisted, or participated in any manner in an investigation,

4           proceeding, or hearing to enforce any provision contained in this part.

5    29 C.F.R. § 1630.12(a).

6    "A plaintiff can show retaliation either through direct or indirect evidence.  Under the direct

7    approach, a plaintiff must present evidence of:  (1) a statutorily protected activity; (2) an adverse

8    action; and (3) a causal connection between the two."  *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744,

9    758 (7th Cir. 2006).

10          Here, Fowler claims, "[d]efendant's [sic] failure to respond to Ms. Fowler's complaints and

11   requests did constitute ... retaliation ....  Other disabled workers['] requests were not ignored and

12   their requests for accomodated [sic] addressed."  Opp'n at 8:23-26.  She provides no  evidence,

13   however, regarding any other disabled workers' experiences in dealing with the agency.  Further, the

14   only requests or complaints of which the Court is aware are Fowler's requests for an

15   accommodation, including to modify or change her position of Lobby Director.  While these

16   requests were protected acts under 29 C.F.R. § 1630.12(a), and while the agency's failure to

17   accommodate or interact were adverse actions under 29 C.F.R. § 1630.4, Fowler has failed to show a

18   causal link between them.  That is, she has failed to show the agency failed to accommodate her, in

19   retaliation for requesting an accommodation.  Nor will the Court allow her to use the agency's mere

20   failure to provide her with a reasonable accommodation, to serve as an act or omission supporting a

21   retaliation claim.  Otherwise, *every* alleged failure to accommodate would be deemed a retaliatory

22   act.  Thus, as Fowler has failed to produce any evidence of retaliation, the Court GRANTS

23   defendants' motion for summary judgment on Fowler's second claim for retaliation under the Act.

24          **3.      Fowler has produced no evidence of harassment causing a hostile work**

25          **environment.**

26          Fowler raises two separate claims alleging harassment and a hostile work environment.  In

27   her Complaint, Fowler alleges for her harassment claim that defendants "intentionally created and

28   tolerated a *hostile work environment*" by failing to prevent disability-based discrimination, by

13

1   refusing her a reasonable accommodation, unfairly criticizing her, intimidating her, providing work

2   exceeding her restrictions, providing inadequate resources, ignoring her, shunning her,

3   marginalizing her, forcing her to retire, and refusing her opportunities and protections as provided

4   by law.  Compl. ¶¶ 56, 59 (emphasis added).  For her hostile work environment claim, she pleads the

5   same allegations.  *Id.* ¶¶ 70, 73.

6          Turning to the similarity in her claims, the Court first notes, in *sexual harassment cases*, a

7   plaintiff may allege quid-pro-quo *harassment*, or physical contact and/or inappropriate comments

8   constituting a *hostile work environment*.  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986).

9   Outside of the sexual harassment context, there is no legally cognizable concept as harassment

10  distinct from a hostile work environment, as there is no quid-pro-quo application of harassment

11  predicated on race, national origin, *et seq*.  Thus, as her parallel allegations indicate, Fowler has in

12  reality only pled one claim for harassment constituting a hostile work environment.

13         Turning to her claim itself, the Court notes, while "[i]t is unlawful to coerce, intimidate,

14  threaten, harass or interfere with any individual in the exercise or enjoyment of, or because that

15  individual aided or encouraged any other individual in the exercise of, any right granted or protected

16  by this part,"  29 C.F.R. § 1630.12(b), the Ninth Circuit, has never recognized the Act or the ADA

17  as giving rise to a harassment claim, and the Circuits are split on the issue.  *See Brown v. City of*

18  *Tucson*, 336 F.3d 1181, 1188-93 (9th Cir. 2003) (distinguishing anti-interference claim from hostile

19  work environment claim); *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005) (Seventh Circuit has

20  never decided the issue under the Act or ADA ); *Quiles-Quiles v. Henderson*, 439 F.3d 1, 5 n.1 (1st

21  Cir. 2006) (assuming the Act would give rise to one for analysis, but not so holding); *Jeseritz v.*

22  *Potter*, 282 F.3d 542, 547 (8th Cir. 2002) (same); *Walton v. Mental Health Ass'n*, 168 F.3d 661,

23  666-67 n. 2 (3d Cir. 1999) (same); *Soledad v. Dep't of Treasury*, 304 F.3d 500, 506 (5th Cir. 2002)

24  (recognizing harassment theory under Act and ADA); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176

25  (4th Cir. 2001) (same for ADA); *Flowers v. S. Regional Physician Servs. Inc.*, 247 F.3d 229, 232-33

26  (5th Cir. 2001) (same).

27         But, the Court notes, even if the Ninth Circuit had recognized such a claim, borrowing from

28  Title VII to do so, *see Brown*, 336 F.3d at 1188-93, Fowler has not produced any evidence to show

harassment causing a hostile work environment.  Although not expressly mentioned in Title VII, it is violated "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]' "  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004.  In order to survive summary judgment, a non-movant must show the existence of a genuine factual dispute regarding whether objectively and subjectively a hostile work environment existed, and whether their employer failed to take adequate remedial and disciplinary action.  *McGinest*, 360 F.3d at 1112.

In her Opposition, when it was time for Fowler to produce or identify the evidence supporting her complaint's allegations, detailing defendants' harassing conduct which led her to allegedly suffer a hostile work environment, she said, "[d]efendant's [sic] failure to respond to [my] complaints and requests did constitute harassment, retaliation[,] and a hostile work environment." Opp'n at 8:23-26.  Rather clearly, Fowler has not shown any ridicule, insulting comments, intimidation, physical contacts, or threats engaged in to such a severe extent or with such a pervasive frequency, to alter the conditions of her employment so as to create an abusive working environment.  Thus, the Court GRANTS defendants' motion for summary judgment on Fowler's fourth claim for harassment and fifth claim for hostile work environment.

**B.      Fowler has produced no evidence of any Title VII violations.**

The Court need not reach the issue as to whether Fowler exhausted her administrative remedies for her Title VII claims, because there is no evidence before the Court to indicate she could produce any evidence on which defendants could be found liable under Title VII.  Section 703 of Title VII, 42 U.S.C. § 2000e-2, only regulates unlawful employment practices, such as discriminatory treatment, based on race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a).  There is no evidence before the Court to suggest defendants acted at any time based on

15

Fowler's race, color, religion, sex, or national origin.[9]  Thus, the Court GRANTS summary judgment for defendants on all of Fowler's Title VII claims.

**II.      The Federal Employees Compensation Act does not preempt the Rehabilitation Act of 1973.**

Defendants argue the FECA preempts the Act, because 5 U.S.C. § 8128 states decisions of the Secretary of Labor in allowing or denying a Workers' Compensation payment are "(1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise."  Mot. at 11-13.  For support, defendants cite *Meester v. Runyon*, 149 F.3d 855, 857 (8th Cir. 1998).  In *Meester*, a postal employee developed work-related carpal tunnel syndrome, requiring surgery.  *Id.* at 856.  She later received Workers' Compensation benefits, under the FECA, from the Department of Labor (the "DOL").  *Id.* at 857.  "FECA requires federal employers to allow injured employees to return to their old positions or, if they can no longer perform their original duties, to offer them reasonable alternative positions.  *See* 5 U.S.C. § 8151(b); 20 C.F.R. § 10.123(d)."  *Meester*, 149 F.3d at 857.  Meester could not resume her old job, so the DOL and the agency, tried to place in her new positions, none of which accommodated her post-surgery abilities.  *Id.*  Nonetheless, the DOL ordered her to accept one or lose her benefits.  *Id.*  She did, but then sued under the Act, inter alia, for failure to accommodate her disability.  *Id.*  The Eighth Circuit held, in a two-to-one decision, that the FECA barred her claim.  *Id.* at 856-57.

In opposition, Fowler directs the Court to *Nichols v. Frank*, 42 F.3d 503 (9th Cir. 1994), *abrogation on other grounds recognized by Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 955-56 (9th Cir. 1999).  Opp'n at 11.  *Nichols* noted the FECA "defines 'injury' as follows:  ... [1] injury by accident, [2] a disease proximately caused by employment, and [3] damage to or destruction of medical braces, artificial limbs, and other prosthetic devices....'  *See* 5 U.S.C. § 8101(5)."  *Nichols*, 42 F.3d at 514.  It also noted the FECA limits a federal employee's compensation for work-related

---

[9]      Further, Fowler has alleged in her third and sixth claims, respectively, that defendants failed to reasonably accommodate her or to interact with her, under Title VII.  She does not, however, provide any legal authority for raising these novel Title VII claims.

1   "injuries" to 75% of monthly pay.  *Id.*  And, it expressly provides the liability of the United States

2   "with respect to the injury or death of an employee is *exclusive*."  *Id.* (emphasis in original) (quoting

3   5 U.S.C. § 8116(c)).  In contrast, *Nichols* noted "Title VII compensates employees who have

4   suffered from unlawful discrimination ... [who] are entitled to equitable relief, including, in

5   appropriate cases, 100% of their back pay ....."  *Nichols*, 42 F.3d at 514.

6          The *Nichols* court then held the FECA did not bar civil rights suits related to work-related

7   injuries, for three reasons.  First, civil rights laws provide remedies for "injuries" caused by

8   discriminatory practices, e.g., based on sex, race, *et seq.*  *Id.* at 515.  The court held this is far

9   beyond the scope of the type of work-related accidental "injuries" with which FECA is concerned.

10  *Id.*  Second, it held the "FECA's exclusivity provisions apply only to additional payments for

11  work-related injuries."  *Id.*  In contrast, civil rights statutes provide far broader remedies.  *Id.* at 515-

12  16.  And third, the court said to hold otherwise would place federal employees injured on the job, in

13  a much worse position, under the Act, than federal employees who suffered the same injury off-the-

14  job, an unjust result Congress did not intend.  *Id.* at 515.

15         In Reply, defendants argue claims arising under Title VII are different than those arising

16  under the Act.  Reply at 5-7.

17         The Court, as it must, follows the Ninth Circuit's holding in *Nichols*.  In doing so, it first

18  notes defendants' reply argument is tantamount to acknowledging that its Workers' Compensation

19  program should not be allowed discriminate on the basis of race, sex, *et seq.*, but should be allowed

20  to discriminate on the basis of disability.  The Court declines to so hold.  In addition, the Court notes

21  while the Third and Sixth Circuits agree with *Nichols*, *see Miller v. Bolger*, 802 F.2d 660, 663-66

22  (3d Cir. 1986); *DeFord v. Sec'y of Labor*, 700 F.2d 281, 289-90 (6th Cir. 1983), no other Circuit,

23  excluding unpublished decisions, has followed *Meester*.  Further, "[t]he greater weight of authority

24  ... holds that recovery of FECA benefits does not bar a subsequent claim for discrimination."

25  *Morris v. Roche*, 182 F.Supp.2d 1260, 1274 (M.D. Ga. 2002) (listing cases).  Lastly, *Meester*'s

26  holding conflicts both with Congress' intent to place federal employees on the same footing as non-

27

28

17

1  federal employees,[10] and threatens to either nullify the beneficial purposes of the Act or force injured

2  employees to choose between their FECA benefits or their civil rights remedies.  The Court will not

3  countenance such a result.  Thus, the Court DENIES defendants' motion for summary judgment on

4  Fowler's third claim for failure to accommodate and on her sixth claim for failure to engage in the

5  interactive process under the Act.

6  **III.     A factual dispute exists as to whether or not the agency could have reasonably**

7  **accommodated Fowler.**

8          Defendants' final argument is Fowler cannot prevail on her failure-to-accommodate claim, as

9  she cannot show a reasonable accommodation existed for her.[11]  Mot. at 15:15-17:10.  The Act only

10  covers an "otherwise qualified individual with a disability ...."  29 U.S.C. § 794(a).  A covered

11  individual may request an agency provide them with a reasonable accommodation for their

12  disability, under section 501 and/or 504 of the Act.  *See Buckingham v. U.S.*, 998 F.2d 735, 739 (9th

13  Cir. 1993).  Here, the Court has already determined there is a factual dispute as to whether Fowler is

14  "disabled" under the Act, *see supra* part I.A.1.a, while defendants do not contest her qualifications

15  for the Lobby Director position, *see supra* part I.A.1.b.  Thus, in order for defendants to obtain

16  summary adjudication of Fowler's third claim for failure to provide a reasonable accommodation,

17  where they argue none existed, they must show this was true as a matter of law, thus absolving them

18  of the duty to reasonably accommodate her.

19  _____

20  [10]      As defendants note in their Motion, federal employees have the right to a trial de novo, after
    their EEO hearings.  Mot. at 5:19-20.  As the Supreme Court has held, Congress provided federal
21  employees this right, because private employees have the right to sue, after they file with the EEOC
    or a similar state agency.  *See Chandler v. Roudebush*, 425 U.S. 840 (1976).  Likewise, the EEOC
22  has declared that "An employer cannot substitute vocational rehabilitation services in place of a
    reasonable accommodation required by the ADA for an employee with a disability-related
23  occupational injury.  An employee's rights under the ADA are separate from his/her entitlements
    under a workers' compensation law."  EEOC Enforcement Guidance: Workers' Comp. and the
24  ADA, Notice No. 915.002, 1996 WL 33161338, Sep. 03, 1996.  Although speaking to state
    programs, this policy must apply with equal force to the FECA, if the Act is to accomplish its goals
25  of combating disability discrimination and helping disabled federal employees contribute to the best
    of their abilities in the workplace.

26  [11]      Defendants do not attack Fowler's sixth claim for failure to engage in an interactive process,
27  save to argue that even if they did not engage in one, it does not matter, because Fowler could not be
    reasonably accommodated.  Mot. at 15:19-22.  As there is a disputed genuine issue of material fact
28  regarding whether defendants reasonably accommodated Fowler, the Court need not and does not
    address whether they also failed to engage in an interactive process.

The duty to accommodate is an affirmative one, and as the Ninth Circuit has held, "An agency *shall* make reasonable accommodation to the known physical or mental limitations of a qualified handicapped applicant or employee *unless* the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program." *Id.* (quoting 29 C.F.R. § 1613.704(a)) (emphasis added).  The Ninth Circuit has also held a plaintiff has the initial burden to prove they are a qualified handicapped individual, *Buckingham*, 998 F.2d 739-40, and a reasonable accommodation was possible, *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002), *cert denied sub nom*, *Hawaii v. Vinson*, 537 U.S. 1104 (2003).  Once done, the burden shifts to a defendant to prove undue hardship.  *Id.*

A "Qualified Handicapped" individual is one who, with or without reasonable accommodation, can perform the essential functions of a job.  *Id.* (citing 29 C.F.R. § 1613.702(f)). A plaintiff who requires an accommodation to perform an essential job function, need "only provide evidence sufficient to make 'at least a facial showing that reasonable accommodation is possible.' " *Buckingham*, 998 F.2d at 740 (citing 29 C.F.R. § 1613.702(f)(2)).  Whether a particular accommodation is reasonable "depends on the individual circumstances of each case" and "requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards."  *Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999).

In contrast, an employer may not meet its burden under the Act by merely speculating that a suggested accommodation is unfeasible.  *Buckingham*, 998 F.2d at 740.  "When accommodation is required to enable the employee to perform the essential functions of the job, the employer has a duty to 'gather sufficient information from the applicant and qualified experts as needed to determine what accommodations are *necessary* to enable the applicant to perform the job....' "  *Id.* (quoting *Mantolete v. Bolger*, 767 F.2d 1416, 1423 (9th Cir. 1985) (emphasis in original)).  "[O]nce the need for accommodation has been established, there is a mandatory obligation to engage in an informal interactive process 'to clarify what the individual needs and identify the appropriate accommodation.' "  *Vinson*, 288 F.3d at 1154 (quoting *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir.2000)).  "An employer who fails to engage in such an interactive process in good faith

1    may incur liability 'if a reasonable accommodation would have been possible.' "  *Id.* at 1116

2    (quoting *Barnett*, 228 F.3d at 1116).  And, once an accommodation has been attempted, the duty to

3    accommodate nonetheless continues, as it is " 'not exhausted by one effort.' "  *Humphrey v.*

4    *Memorial Hosp. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001) (quoting *McAlindin v. County of San*

5    *Diego*, 192 F.3d 1226, 1237 (9th Cir. 2000), *amended* 201 F.3d 1211 (2000), *cert. denied*, 530 U.S.

6    1243 (2000)).

7        Defendants advance four arguments in support of their assertion that Fowler has failed to

8    meet her burden of proof on this claim.  First, they argue she has only provided "generalized

9    suggestions" as to where she might work.  Mot. at 16:5-7.  Second, they claim she was assigned to

10   the Oakland branch, but her witness Frederic Jacobs, President of the American Postal Workers

11   Union AFL-CIO, Local 78, has only suggested positions unavailable to Oakland branch employees.

12   *Id.* at 16:7-11.  Third, they claim they offered her a position as Nixie, wearing a face mask or

13   breathing device, which modification Fowler declined, but never responded to their request to

14   provide medical documentation that she could not perform with such a modification.  *Id.* at 16:12-

15   17.  Fourth, once Fowler indicated she could not perform in the Lobby Director position, defendants

16   determined she was "unemployable."  *Id.* at 16:18-27.

17       With regards to the first argument, Fowler need only provide a facial showing that

18   accommodation was possible.  *Buckingham*, 998 F.2d at 740.  Fowler declares the Oakland regional

19   office has thousands of employees in hundreds of positions in 20 locations.  Fowler Decl. ¶ 5.  She

20   further declares her location itself, a multi-floor building, covering thousands of square feet, had

21   numerous areas and positions suitable for her conditions, either in the "administrative towers" as a

22   personnel or injury compensation clerk, or in damaged mail, which positions are commonly used for

23   injured employees.  *Id.*  Her witness, Jacobs, declares he "suggested numerous positions, including,

24   [in the] administrative office in the office towers, and backroom work at the stations and branches,

25   [or] work in damaged mail, but to no avail."  Jacobs Decl. ¶ 5.  Fowler has thus met her burden

26   under *Buckingham*.  In turn, however, defendants do not advance any counter-argument.

27       With regards to defendants' second argument, defendants' agent declares agency employees

28   work in "crafts," and "[a]ccommodations are not usually awarded outside of craft."  Decl. of Mary

20

1  Young ¶ 3.  Defendants do not explain what this means or how a transfer beyond "craft" would

2  constitute an "undue hardship."  Further, "[g]iven the duty the Act places on employers, there is no

3  merit to [defendants'] argument that there is a per se rule against transfers as reasonable

4  accommodations."  *Buckingham*, 998 F.2d at 740.

5       Turning to defendants' third argument, an examination of the pages of Fowler's deposition

6  transcript and attached exhibits which defendants cite in support of this argument, reveals absolutely

7  no evidentiary support for it.  Further, the Nixie position is not the issue in this matter.  This issue is

8  defendants' alleged failure to accommodate Fowler in the Lobby Director position.

9       Finally, defendants' fourth argument is illogical.  They claim that they found Fowler

10  "unemployable," after she indicated she "could not perform" the Lobby Director position.  The

11  evidence before the Court shows, however, while defendants claimed this position was designed for

12  her lifting, standing, and walking impairments, when Fowler worked in it, the actual duties of the

13  position required her to greatly exceed her impairments.  Further, defendants knew this early on, and

14  Fowler told them so, but they did nothing to address the problem.  The duty to accommodate is a

15  *continuing* one.  *Humphrey*, 239 F.3d 1138.  Thus, it is illogical for defendants to assert they found

16  Fowler unemployable after she indicated she could not perform as Lobby Director, as they never

17  afforded her a reasonable opportunity to perform this job.  Considering defendants' four arguments,

18  Fowler has met her burden of proof.  Defendant have not met theirs.  Thus, as genuine issues of

19  material fact exist regarding whether defendants reasonably accommodated Fowler, the Court

20  DENIES their motion for summary adjudication of her third claim for failure to accommodate.

21                                    **CONCLUSION**

22       Accordingly, the Court GRANTS in part and DENIES in part defendants' Motion for

23  Summary Judgment (the "Motion") [Docket No. 38].  Specifically, the Court GRANTS the Motion

24  with regards to Fowler's first through sixth claims, under Title VII; GRANTS the Motion with

25  regards to Fowler's first, second, fourth, and fifth claims under the Act; and, DENIES the Motion

26  with regards to Fowler's third and sixth claims under the Act.

27

28

1

2    IT IS SO ORDERED.
     June 9, 2008
3                                    _____
                                     Saundra Brown Armstrong
4                                    United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28